1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   ZOOM IMAGING SOLUTIONS, INC.,      No. 2:19-cv-01544-WBS-KJN

13              Plaintiff,

14        v.                            MEMORANDUM & ORDER RE: MOTION
                                        TO DISMISS
15   EDWARD ROE; MAXWELL RAMSAY; JON
     CROSSEN; CORINNE FUEREST; ANDREW
16   ALSWEET; KEVIN TOON; JASON
     PEEBLER; ABIGAIL NEAL; POWER
17   BUSINESS TECHNOLOGY LLC; and
     DOES 1 through 100, inclusive,
18
              Defendants.
19

20                          ----oo0oo----

21

22        Plaintiff Zoom Imaging Solutions, Inc. ("Zoom") brings

23   this action against defendants Edward Roe, Maxwell Ramsay, Jon

24   Crossen, Corinne Fuerest, Andrew Alsweet, Kevin Toon, Jason

25   Peebler, Abigail Neal, Power Business Technology LLC ("Power"),

26   and Does 1 through 100, alleging that defendants accessed and

27   used Zoom's confidential information to build and develop

28   competitor Power's business, in violation of defendants'

                                  1

employment agreements, as well as state and federal law.  Before the court is defendants' Motion to Dismiss. (Docket No. 23.)

I.   <u>Relevant Allegations</u>

Zoom provides printing and imaging services to commercial businesses.  (Compl. at 3, ¶ 19.)  Zoom's services include the sale, installation, and servicing of digital print and copy systems, print services, and software solutions.  (<u>Id.</u>)

Zoom develops, acquires, and maintains business information related to its customers, including pricing information, customer preferences and contract renewal information, as well as Zoom's business, sales, and marketing strategies (collectively the "Confidential Information"). (Compl. at 4, ¶ 23.)  Zoom's success is attributable to its use of this information.  Zoom therefore invests substantial time, money, and effort developing, acquiring, and maintaining this information.  (Compl. at 4, ¶¶ 21, 22.)

The Confidential Information is not generally known. (Compl. at 4, ¶ 25.)  Because it gives Zoom a competitive advantage over persons not in possession of this information, Zoom uses reasonable and diligent efforts to maintain and protect the Confidential Information.  (Compl. at 4, ¶¶ 24, 27.)  Such protection includes multiple levels of restricted access. (Compl. at 11, ¶ 55.)

Defendant Power is a competitor of Zoom founded by defendant Roe.  (Compl. at 8, ¶ 48.)  All other named defendants (collectively the "Individual Defendants") worked for Zoom in various capacities: Roe worked for Zoom as President (Compl. at 4, ¶ 28); Peebler as Vice President of Sales (Compl. at 5, ¶ 34),

Ramsay and Crossen as Regional Sales Managers (Compl. at 5, ¶¶ 29, 31); Toon and Neal as Account Executives (Compl. at 5, ¶¶ 33, 35); Alsweet as a Senior Account Manager (Compl. at 5, ¶ 32); and Fuerst as Zoom's Leasing Administrator. (Compl. at 5, ¶ 30.)

In 2017, Roe signed an Executive Agreement ("2017 Executive Agreement") where he promised to refrain from using Confidential Information to solicit Zoom's customers or employees for a period of two years after the termination of his employment. (Compl. at 5, ¶ 36.) Between 2005 and 2018, all Individual Defendants received and acknowledged receipt of Zoom's employee handbook ("Employee Handbook"). (Compl. at 6, ¶ 37-45). The handbook required employees to safeguard confidential information and prohibited employees from removing, using, or sending copies of any company records without prior approval of the President of Zoom. Id. In 2019, Roe signed an employment separation agreement and release ("2019 Separation Agreement") which prohibited Roe from making disparaging comments about Zoom after his employment terminated. (Compl. at 7, ¶ 46.)

Defendant Roe founded Power in 2019. (Compl. at 8, ¶ 48.) While still employed with Zoom, Roe solicited Zoom's employees with job offers to work at Power. (Compl. at 8, ¶ 49.) Before and after the Individual Defendants left Zoom for Power, defendants "accessed, downloaded, and emailed Zoom's confidential information and/or trade secrets" (Compl. at 8, ¶ 50), including customers' lease information (Compl. at 8, ¶ 50(a), (d)), pricing formulas (Compl. at 8, ¶ 50(b)), business plans (Compl. at 9, ¶ 50(c)), and files assigned to defendant Crossen. (Compl. at 9, ¶ 50(e).) Defendants accessed the information in a manner that

3

exceeded Zoom's authorization. (Compl. 1, ¶ 54.) With Zoom's
Confidential Information, defendants interfered with plaintiff's
contracts with at least 74 customers. (Compl. at 10, ¶ 51.)
Further, by transmitting and conveying Zoom's information,
defendants have diminished Zoom's goodwill and standing among its
customers. (Compl. at 10, ¶ 52.)

Plaintiff alleges the following nine causes of action:
(1) breach of contract, (2) breach of implied covenant of good
faith and fair dealing, (3) violation of the California Uniform
Trade Secrets Act, (4) violation of the Defend Trade Secrets Act,
(5) intentional interference with contractual relations, (6)
violation of the Computer Fraud and Abuse Act, (7) breach of
fiduciary duty, (8) breach of loyalty, and (9) unfair business
practices.

II.  Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court
is whether, accepting the well-pleaded allegations in the
complaint as true and drawing all reasonable inferences in the
plaintiff's favor, the plaintiff has stated a claim to relief
that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009). The court, however, is "not required to accept
as true allegations . . . that are merely conclusory, unwarranted
deductions of fact, or unreasonable inferences." Seven Arts
Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251,
1254 (9th Cir. 2013). "The plausibility standard is not akin to
a 'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." Id.

III. Discussion

A.  Breach of Contract Claim (Count One)

Plaintiff's claim for breach of contract arises out of three documents: Defendant Roe's 2017 Executive Agreement, Defendant Roe's 2019 Separation Agreement signed at the end of his employment, and the Individual Defendants' Employee Handbooks received on dates ranging from 2005 to 2018.  (Compl. at 12, ¶¶ 61, 62, 63.)

In California, to allege a cause of action for breach of contract, plaintiff must plead "(1) the existence of a contract, (2) defendant's breach, (3) plaintiff's performance or excuse for nonperformance, and (4) the resulting damages to the plaintiff."  Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).

Under Rule 10 of the Federal Rules of Civil Procedure, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count" if doing so "would promote clarity."  Fed. R. Civ. P. 10(b).  "Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation."  Bautista v. Los Angeles Cty., 216 F.3d 837, 840-41 (9th Cir. 2000).  Defendants object to plaintiff's "lumping" of allegations related to three different contracts under a single claim.  (Motion to Dismiss at 6).  The court agrees the plaintiff must separate the claims.

Plaintiff alleges the violation of three different contracts by eight named defendants, and up to 100 unnamed ones.  Each of the contracts under this claim constitutes a separate

transaction or occurrence.  Most obviously, some of the Employee

Handbook agreements were signed over a decade before Roe signed

the Executive Agreement in 2017, and the Individual Defendants

other than Roe are not parties to defendant Roe's 2017 and 2019

agreements.  Further, plaintiff has not alleged that defendant

Roe's 2019 Agreement, which prevents Roe from making disparaging

comments about Zoom, modifies or is related to Roe's 2017

Executive Agreement, which governed his confidentiality

obligations during his employment.  The agreements at issue under

this claim are therefore separate transactions.

Stating the allegations for each contract in separate

counts is necessary for clarity and reviewability.  This court

has previously dismissed complaints under Rule 10(b) where "the

claims do not identify which of the many factual allegations

apply to each specific claim."  Haney v. Bondoc, No. CV 1-07-

1222-GMS, 2009 WL 926887, at *2 (E.D. Cal. Apr. 3, 2009).  Such

is the case here.  Under the "Breach of Contract" heading in the

Complaint, plaintiff indiscriminately incorporates paragraphs 1

through 59 of the Complaint, quotes each of the three agreements,

and then asserts that "the Individual Defendants materially

breached each and every one of the obligations described above

by, among other things, acquiring, disclosing and using Zoom's

sensitive, confidential, and proprietary information and trade

secrets and failing to promptly return all of Zoom's proprietary

information upon termination of each of their employment."

(Compl. at 14, ¶ 68.)  The allegations do not identify which

actions violated which contract.  As it stands, the Complaint

precludes "meaningful review [of] the complaint," Haney, 2009 WL

926887, at 2*, because the court cannot determine what the claims purport to be or whether they are well-pleaded.  Separation of the allegations into separate counts is therefore necessary for clarity.

### B.    Breach of Implied Covenant of Good Faith and Fair Dealing (Count Two)

In California, there is "an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  Reinhardt v. Gemini Motor Transp., 879 F. Supp. 2d 1138, 1144 (E.D. Cal. 2012) (citing Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal.4th 390, 400 (2000)).  To plead a breach of the covenant of good faith and fair dealing plaintiff must allege that "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."  Id.  "Importantly, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated."  Ahmadi v. United Cont'l Holdings, Inc., No. 1:14-CV-00264-LJO, 2014 WL 2565924, at *6 (E.D. Cal. June 6, 2014) (citing Plastino v. Wells Fargo Bank, 873 F.Supp.2d 1179, 1191 (N.D.Cal.2012).

The court must dismiss plaintiff's claim because it fails to identify the specific contractual provision frustrated

by defendants' conduct.  See id.; Plastino, 873 F. Supp. 2d 1191;

Perez v. Wells Fargo Bank, N.A., No. C-11-02279 JCS, 2011 WL

3809808, at *18 (N.D. Cal. Aug. 29, 2011).  Plaintiff merely

incorporates by reference all previous paragraphs, including the

three contracts. (Compl. at 15, ¶ 73.)  Plaintiff then lists, in

one paragraph, around eight different collective actions by

defendants that allegedly breached the implied covenant of good

faith and fair dealing. (Compl. at 15, ¶ 75.)  The Complaint

does not identify the contract or the provision the defendants'

conduct frustrates.  The court cannot evaluate, for example, what

the "benefits of the contract" are without a reference to the

contract.  See Reinhardt, 879 F. Supp. 2d at 1144; see also,

e.g., Ahmadi, 2014 WL 2565924, at *6 (identifying the benefits of

a contract to determine if plaintiff correctly alleges that

defendant's conduct interfered with such benefits).  The court

must therefore dismiss this claim.

        C.    Misappropriation of Trade Secrets in Violation of
            the California Uniform Trade Secrets Act (Count
            Three)

        To state a valid claim for misappropriation of trade

secrets under the California Uniform Trade Secrets Act (CUTSA),

Cal. Civ. Code §§ 3426 et seq., a plaintiff must allege that "(1)

the plaintiff owned a trade secret, (2) the defendant acquired,

disclosed, or used the plaintiff's trade secret through improper

means, and (3) the defendant's actions damaged the plaintiff."

E. & J. Gallo Winery v. Instituut Voor Landbouw-En

Visserijonderzoek, No. 117CV00808DADEPG, 2018 WL 2463869, at *3

(E.D. Cal. June 1, 2018 (quoting Cytodyn, Inc. v. Amerimmune

8

Pharm., Inc., 160 Cal. App. 4th 288, 297 (2008)).

Defendants do not contest that plaintiff has sufficiently pleaded improper acquisition or disclosure of alleged trade secrets, including, for example, disclosure of information to defendant Power beyond the authorization granted by the Employee Handbook.  (Compl. at 17 ¶¶ 82, 86); cf. E. & J. Gallo Winery, 2018 WL 2463869, at *6 ("[B]ecause defendants were allegedly given access to plaintiffs' trade secrets pursuant to a non-disclosure agreement, plaintiffs must plead facts which, if proven to be true, would show that the defendant used the information in a manner not authorized by the parties' agreement.").  Defendants also do not contest that the allegations sufficiently plead damages.  (See Compl. at ¶¶ 59, 88.)  Defendants contest only whether plaintiff has sufficiently identified the trade secrets at issue.

1.    Identification of Trade Secrets -- Legal
Standard

A "trade secret" under the CUTSA is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).

At the pleading stage, "a plaintiff need not 'spell out the details of the trade secret.'"  Alta Devices, Inc. v. LG

9

Elecs., Inc., 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (quoting
Autodesk, Inc. v. ZWCAD Software Co., 2015 WL 2265479, at *5
(N.D. Cal. May 13, 2015)); see also E. & J. Gallo, 2018 WL
2463869, at *3.  "To so require would mean that the complainant
would have to destroy the very thing for which he sought
protection by making public the secret itself."  TMX Funding,
Inc. v. Impero Techs., Inc., No. C 10-00202 JF (PVT), 2010 WL
2509979, at *3 (N.D. Cal. June 17, 2010).  However, "the
complaint must do more than describe the subject matter of the
trade secrets in a 'vague and conclusory' manner."  E. & J.
Gallo, 2018 WL 2463869, at *3 (quoting Bladeroom Grp. v.
Facebook, Inc., No. 5:15-cv-01370-EJD, 2015 WL 8028294, at *3
(N.D. Cal. Dec. 7, 2015).  The plaintiff must "describe the
subject matter of the trade secret with sufficient particularity
to separate it from matters of general knowledge in the trade or
of special persons who are skilled in the trade, and to permit
the defendant to ascertain at least the boundaries within which
the secret lies."  Alta Devices, 343 F. Supp. 3d at 881.

## 2.  Application

Plaintiff states that "in connection with its business,
Zoom has developed and/or acquired and maintained certain
business information, including, but not limited to, customer
contact information; pricing, costs, margins, and purchase
histories, supplier rates; information on customer likes,
preferences, dislikes, purchase patters and contract renewal
information; financial information concerning Zoom, and its
customers; comprehensive financing packages; internal employee
costs; and Zoom's business, sales and marketing strategies and

plans (collectively the "Confidential Information")." (Compl. at 4, ¶ 23.) Plaintiff does not claim, however, that all of this Confidential Information constitutes trade secrets. Rather, plaintiff alleges that the trade secrets at issue are part of this Confidential Information. (Compl. at 17, ¶ 79 ("Zoom is/was the rightful owner of the Confidential Information, including but not limited to, trade secrets.").)

Defendants argue that plaintiff's allegations do not sufficiently notify defendants of the "boundaries within which the [trade] secret[s] lie" because the list of Confidential Information is not exhaustive. The Confidential Information is "business information, including, but not limited to" the items listed. (Compl. at 4, ¶ 23 (emphasis added).)

When asked at oral argument where plaintiff has identified the general categories or descriptions of the purported trade secrets, counsel pointed to paragraph 86 of the Complaint, which simply alleges "that defendants "used Zoom's trade secrets and other confidential business information . . . including the use of valuable information regarding customers' contract particulars (including, without limitation pricing and end date)." (Compl. at 18, ¶ 24.) That language neither identifies the purported trade secrets nor clarifies the general category of the purported trade secrets. Both the list of Confidential Information and the language in paragraph 86 fail to distinguish between the Confidential Information and the trade secrets. Because the list of Confidential Information is not exhaustive, and because the trade secrets are an unknown subset of the indefinite Confidential Information, plaintiff does not

sufficiently identify anything.  The Complaint gives defendants

no clue whatsoever about what information forms the basis of

plaintiff's misappropriation claim.

Indeed, plaintiff's factual allegations with respect to

the trade secrets at issue look like those that other courts have

deemed too vague.  For example, in Space Data Corp. v. X, No. 16-

cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017),

the plaintiff purported to identify the trade secrets at issue by

alleging that they involved "data on the environment in the

stratosphere" and "data on the propagation of radio signals from

stratospheric balloon-based transceivers."  Id.  The court

granted defendant's motion to dismiss because plaintiff's "high-

level overview" of its purported trade secrets was too vague.

Id.  Zoom's allegations are more vague than those in Space Data.

The Space Data plaintiff at least identified a general topic.

Zoom refers only to "business information" and "valuable

information."  (Compl. at 18, ¶¶ 23, 86).  These allegations do

not sufficiently identify the trade secrets at issue.  The court

must therefore dismiss this claim.

D. Defend Trade Secrets Act Claim (Count Four)

Under the Defend Trade Secrets Act (DTSA), "[a]n owner

of a trade secret that is misappropriated may bring a civil

action . . . if the trade secret is related to a product or

service used in, or intended for use in, interstate or foreign

commerce." 18 U.S.C. § 1836(b)(1).  "The elements of

misappropriation under the DTSA are similar to those under the

CUTSA, except that the DTSA applies only to misappropriations

that occur or continue to occur on or after its date of enactment

on May 11, 2016." Alta Devices, 343 F. Supp. 3d at 877 (internal citations omitted). Therefore, to state a valid claim for misappropriation of trade secrets under DTSA, a plaintiff must allege that "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." E. & J. Gallo, 2018 WL 2463869, at *3.

As in its response to plaintiff's CUTSA claim, defendants do not contest that plaintiff has sufficiently pleaded improper acquisition or disclosure of alleged trade secrets. Defendants also do not contest that plaintiff sufficiently pleaded damages. Defendants contest only whether plaintiff has sufficiently identified the trade secrets at issue.

"DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets." Alta Devices, 343 F. Supp. 3d at 881. Because plaintiff's allegations were not sufficiently particular under the CUTSA, they are also insufficient under the DTSA. See id. at 881-82 (finding sufficient particularity under both statutes simultaneously). The court therefore will dismiss this claim.

E.   Common Law Claims

Defendant argues that plaintiff's four common law claims for intentional interference with contractual relations, breach of fiduciary duty, breach of loyalty, and unfair business practices are preempted by the CUTSA and must be dismissed.

Because the CUTSA has a "'comprehensive structure and breadth, courts have found 'that breadth suggests a legislative intent to preempt the common law.'" Copart, Inc. v. Sparta

13

Consulting, Inc., 277 F. Supp. 3d 1127, 1156 (E.D. Cal. 2017) (internal citations omitted) (quoting AccuImage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003); I.E. Assocs. v. Safeco Title Ins. Co., 39 Cal. 3d 281, 285 (1985)).

The CUTSA includes an express preemption provision. Cal. Civ. Code § 3426.7. The provision "expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation." Copart, 277 F. Supp. 3d at 1157 (quoting K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal.App.4th 939, 954 (2009)). "At the same time, § 3426.7 implicitly preempts alternative civil remedies based on trade secret misappropriation." Id. (quoting K.C. Multimedia, 171 Cal.App.4th at 954).

"[T]he determination of whether a claim is based on trade secret misappropriation is largely factual." Deerpoint Grp., Inc. v. Agrigenix, LLC, 345 F. Supp. 3d 1207, 1236 (E.D. Cal. 2018) (quoting Angelica Textile Servs., Inc. v. Park, 220 Cal.App.4th 495, 505 (2013)). The CUTSA preempts civil, non-contract claims "based on the same nucleus of facts as trade secret misappropriation." Id. "In other words, preemption generally applies where there is no material distinction between the wrongdoing underlying the CUTSA claim and the non-CUTSA claim." Ikon, 2010 WL 5129293, at *3. "Preemption is not triggered where the facts in an independent claim are similar to, but distinct from, those underlying the misappropriation claim." Farmers Ins. Exch. v. Steele Ins. Agency, Inc., No. 2:13-CV-00784-MCE, 2013 WL 3872950, at *7 (E.D. Cal. July 25, 2013). To

avoid preemption, plaintiff's common law claims must therefore be "based on more than just the misappropriation of Plaintiffs' trade secrets." Leatt Corp. v. Innovative Safety Tech., LLC, No. 09-CV-1301-IEG (POR), 2010 WL 2803947, at *6 (S.D. Cal. July 15, 2010). If a claim is not preempted under the CUTSA, the court must then evaluate whether the allegations sufficiently state a claim. See Ikon, 2010 WL 5129293, at *3.

### 1. Intentional Interference with Contractual Relations (Count Five)

#### a. Preemption

Plaintiff alleges that defendants "intended to interfere" with Zoom's contractual relationships. (Compl. at 22, ¶ 109.) Plaintiff's claim certainly relies, at least in part, on its allegations of trade secret misappropriation. Plaintiff incorporates paragraphs 1 through 105 (Compl. at 22, ¶ 107), and alleges that "customers were solicited to transfer their account to Power utilizing Zoom's confidential information and trade secrets" (Compl. at 23, ¶ 114). These allegations rely on the theft of trade secrets, so any action relying on these allegations is preempted by the CUTSA.

However, allegations in plaintiff's complaint, which for some reason plaintiff's counsel apparently disavowed at oral argument, also include that defendant Roe lied to Toshiba, then a Zoom equipment provider, about Zoom's parent company Xerox shutting down all Zoom operations. (Compl. at 24, ¶ 115). Roe allegedly contacted Toshiba to communicate that "Zoom was closed and would no longer be able to service any customers with Toshiba

15

equipment."  (Compl. at 27, ¶ 132.)

Plaintiff's allegations sufficiently plead wrongful conduct distinct from the alleged misappropriation of trade secrets.  Roe's alleged lying to Toshiba is not part of plaintiff's misappropriation allegations and does not rely on defendants using the misappropriated information.  "Because this allegation arises from facts different from the claim of misappropriation of trade secrets, the claim is not preempted by CUTSA" to the extent that it relies on non-theft allegations. Ikon, 2010 WL 5129293, at *4; Copart, 277 F. Supp. 3d at 1160.

b.   <u>Sufficiency of Pleadings</u>

To plead a cause of action for intentional interference with contractual relations, plaintiff must allege "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." <u>Walters v. Fid. Mortg. of CA</u>, 730 F. Supp. 2d 1185, 1210 (E.D. Cal. 2010).

Plaintiff fails to sufficiently plead this claim. First, plaintiff does allege the existence of valid contractual relationship with Toshiba.  (Compl. at 22, ¶ 108; 24, ¶ 115.) Second, defendants were allegedly aware of this contract. (Compl. at 23, ¶ 115.)  Defendants' statements to Toshiba that Zoom would "no longer be able" to service customers with Toshiba equipment shows awareness of an existing contractual relationship.  (Id.)  Plaintiff thus satisfies the first and second prongs.

Third, plaintiff satisfies the third prong because it sufficiently alleges intentional acts designed to disrupt the contractual relationship.  Plaintiff pleads that defendants told Toshiba false information about Zoom to get Toshiba "to authorize Power as a distributor in the same geographic area as Zoom," to "undercut Zoom's business model," and "to divert Zoom's existing customers to Power."  (Id.)  Interference is "certain or substantially certain to occur" where defendants tell Zoom's client that Zoom would no longer provide a service.  See Walters, 730 F. Supp. 2d at 1210.

Plaintiff, does not satisfy the fourth prong, however, because it does not allege actual breach of Toshiba's contract with Zoom. Plaintiff alleges only that Power obtained better pricing terms from Toshiba than Zoom.  (Compl. at 24, ¶ 115.) Plaintiff does not allege that Toshiba or plaintiff breached any of the terms in their contract.  Because plaintiff fails to satisfy the actual breach requirement, plaintiff has failed to state a claim for intentional interference with contractual relations.  The court will therefore dismiss this claim.

## 2.    Breach of Fiduciary Duty (Count Seven)

### a.    Preemption

According to plaintiff, defendants breached their fiduciary duties not to "misappropriate trade secrets or confidential information, solicit employees to leave their employment, or assist potential competitors."  (Compl. at 26, ¶ 130.)  Defendants allegedly solicited Zoom's employees, promised Zoom's employees certain salaries and business opportunities, sought business opportunities for Power, instructed Zoom's

17

customers to cancel Zoom's service, and modified financial
arrangements to ease in transfer of accounts to power.  Also, Roe
allegedly lied and pitched preferred pricing terms to Toshiba.
(Compl. at 27, ¶ 132.)  Defendants allegedly committed these acts
"while still working for Zoom."  (Id.)

Most of plaintiff's allegations rely on the same
wrongful conduct alleged under the misappropriation of trade
secrets claim.  According to plaintiff, defendants "used the
confidential information . . . to solicit employees from Zoom's
current employees."  (Compl. at 18, ¶ 86.)  Defendants allegedly
also "used the confidential information . . . to solicit business
for their own benefit."  (Id.)  Similarly, defendants relied on
"confidential lease information for an existing Zoom customer" to
give the customer "detailed instructions" to "cancel services
with Zoom."  (Compl. at 8, ¶ 50(a).)  Finally, that same
confidential lease information was used to "unbundl[e]" the
customer "to facilitate transfer to Power."  (Id.)  None of these
factual allegations rely on "non-theft related allegations."  See
Copart, 277 F. Supp. 3d at 1160.

Roe's alleged lie to Toshiba, however, constitutes a
wrongful action by defendant independent of the misappropriation
allegations.  Plaintiff states that "Roe represented to Toshiba
that Zoom was closed and would no longer be able to service any
customers with Toshiba equipment in order to mislead Toshiba into
agreeing to authorize Power as a distributor in the same
geographic area as Zoom, and to provide Power with lower,
preferred pricing terms compared to those available to Zoom."
(Compl. 27, at ¶ 132.)  Plaintiff thus alleges two acts.  First,

Roe spread false and damaging information about his employer to Toshiba.  Second, Roe offered Toshiba a deal he knew would be competitive because he knew the details of Toshiba's deal with Zoom.  The complaint does not suggest that defendant referenced the stolen information to lie to Toshiba, but it does describe defendant's undercutting of Zoom's prices with the use of the misappropriated information.  (Compl. at 16, ¶ 75.)  "In construing these facts in the light most favorable to Plaintiff as required under Rule 12(b)(6)," Roe's alleged prejudicial lying, separate from his pricing offers to Toshiba, "can form an independent nucleus for a breach of fiduciary duty claim."  See Ali, 544 F. Supp. 2d at 1070.

### b.    Sufficiency of the Pleadings

"The elements of a breach of fiduciary duty claim are (1) existence of a fiduciary relationship; (2) breach of the fiduciary duty; and (3) damage proximately caused by that breach."  Lane v. Vitek Real Estate Indus. Grp., 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010).  Plaintiff pleads this cause of action against defendants Roe, Ramsay, Neal, and Toon.  However, because the only allegations that can sustain this claim involve only Roe, the court dismisses this claim against Ramsay, Neal, and Toon, and evaluates this claim only as to Roe's conduct.

### i.    Fiduciary Relationship

Plaintiff adequately alleges the existence of a fiduciary relationship with Roe.  Employers have fiduciary relationships with corporate officers and members of the employer's board of directors as a matter of law.  Rita Med. Sys., Inc. v. Resect Med., Inc., No. C 05-03291 WHA, 2007 WL

161049, at *6 (N.D. Cal. Jan. 17, 2007).  Roe was a corporate officer and therefore had a fiduciary relationship with Zoom. (See Compl. at 4, ¶ 28.)

### ii.  Breach of Duty

Plaintiff sufficiently alleges Roe's breach of fiduciary duty.  According to plaintiff, Roe "represented to Toshiba that Zoom was closed and would no longer be able to service any customers with Toshiba equipment," contrary to the interests of his employer, Zoom.  (Compl. at 27, ¶ 132.) Plaintiff's allegations thus satisfy the second prong.  Cf. Buick v. World Sav. Bank, 565 F. Supp. 2d 1152, 1159 (E.D. Cal. 2008) (finding a breach where plaintiff alleged that defendant "knowingly acted against plaintiffs' best interests and instead acted on behalf of World whose interests were adverse to plaintiffs.").

### iii.  Damages

Plaintiff alleges damages stemming from Roe's lies to Toshiba, including Toshiba's authorization of Power as a distributor in the same geographic area as Zoom and the damages caused by such authorization.  (Compl. at 27, ¶¶ 132, 133.) Plaintiff thus has sufficiently pleaded a claim for breach of fiduciary duty against defendant Roe.

### 3.  Breach of Loyalty (Count Eight)

### a.  Preemption

Plaintiff allegations under this claim are very similar to those under the breach of fiduciary duty claim.  This court finds no reason to conclude differently here: plaintiff's allegation that Roe, during his employment at Zoom, lied to

20

Toshiba about Xerox closing all Zoom operations is a wrongful action independent of the theft of information. This claim therefore is not preempted by the CUTSA to the extent that it relies on non-theft allegations. See Copart, 277 F. Supp. 3d at 1160. As before, because the only allegations independent of the theft allegations involve only Roe, the court dismisses this claim against defendants Ramsay, Neal, and Toon, and considers the sufficiency of the allegations only as to Roe.

### b.  Sufficiency of Pleadings

California Labor Code § 2863 imposes on employees a duty of loyalty to their employer. Pollara v. Radiant Logistics Inc, No. CV 12-0344 GAF (SPX), 2013 WL 12113385, at *7 (C.D. Cal. May 30, 2013.)  Section 2863 requires any "employee who has any business to transact in his own account, similar to that entrusted to him by his employer, [to] always give the preference to the business of the employer."[1]

To state a claim for breach of the duty of loyalty, a plaintiff must plead: "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." E.D.C. Techs., Inc. v. Seidel, 216 F. Supp. 3d 1012, 1016 (N.D. Cal. 2016).

---

[1]   Plaintiff also alleges that defendants breached the duty of loyalty imposed under California Labor Code § 2860. (Compl. at 27, ¶ 136.)  Section 2860 forbids employees from keeping anything acquired "lawfully or unlawfully" during or after their employment.  Cal. Lab. Code. § 2860.  A claim for a violation of this section relies only on theft allegations, so it is preempted by the CUTSA.  This court therefore proceeds only under the duty of loyalty imposed under Section 2863.

Plaintiff sufficiently pleads this claim. First, plaintiff alleges the existence of an employer-employee relationship between Zoom and Roe. (Compl. at 27, ¶ 135.) Such a relationship gives rise to a duty of loyalty and satisfies the first prong. E.D.C. Techs., 216 F. Supp. 3d at 1016 ("California courts . . . use[ ] broad language suggesting that all employees owe a duty of loyalty to their employers.")

Second, plaintiff also claims at least one breach of that duty in its allegations that Roe, during his employment with Zoom, called Toshiba to lie about Xerox shutting down all Zoom operations. (Compl. at 27, ¶ 132.) Roe failed to "give the preference to the business of [his] employer" because he lied to his employer's client to make his new business look more favorable. Plaintiff's allegations therefore satisfy the second prong.

Third, plaintiff alleges damages stemming from defendant's lying, including Toshiba's authorization of Zoom's competitor as a distributor and the economic damages caused by such authorization. (Compl. at 27, ¶¶ 132, 133.) Plaintiff thus satisfies the third prong has sufficiently pleaded a claim for breach of duty of loyalty against Roe.

4. <u>Unfair Business Practices in Violation of the California Unfair Competition Law (Count Nine) – Preemption</u>

California's Unfair Competition Law "establishes three varieties of unfair competition -- acts or practices which are unlawful, or unfair, or fraudulent. An act can be alleged to violate any or all of the three prongs of the UCL." Herron v.

Best Buy Co. Inc., 924 F. Supp. 2d 1161, 1168 (E.D. Cal. 2013);
Cal. Bus. & Prof. Code § 17200 et seq.  Zoom alleges that
defendants acted unlawfully and unfairly, but not fraudulently.

Plaintiff's claim that defendants acted unlawfully is
explicitly based on the same nucleus of facts as trade secret
misappropriation.  According to plaintiff, defendants acted
unlawfully because they acted in violation of the CUTSA.  The
claims are thus identical and "there is no material distinction
between the wrongdoing underlying" the two claims.  See Ikon,
2010 WL 5129293, at *3.  The CUTSA thus preempts this claim.

Plaintiff's claim that defendants acted unfairly
similarly relies on the same wrongful actions as those under the
misappropriation claim.  Defendants allegedly acted unfairly
because violated "violate[d] laws governing confidential,
proprietary, and trade secret information," and "use[d] Zoom's
confidential and proprietary business information" to solicit
employees and customers.  (Compl. at 29, ¶ 145.)  Plaintiff's
claim here, like its CUTSA claim, relies on the access, download,
and emailing of Zoom's confidential information, and is therefore
preempted under the CUTSA.

F.   Computer Fraud and Abuse Act Claim (Count Six)

The Computer Fraud and Abuse Act (CFAA), 18 U.S.C §
1030, "prohibits a number of different computer crimes, the
majority of which involve accessing computers without
authorization or in excess of authorization, and then taking
specified forbidden actions, ranging from obtaining information
to damaging a computer or computer data."  LVRC Holdings LLC v.
Brekka, 581 F.3d 1127, 1131 (9th Cir. 2009).

The CFAA permits "[a]ny person who suffers damage or loss by reason of a violation of this section [to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). Such a civil action, however, "may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." Id. To state a private cause of action, a plaintiff therefore must allege "that the defendant violated one of the provisions of § 1030(a)(1)-(7), and that the violation involved one of the factors listed" in § 1030(c)(4)(A)(1).[2] Brekka, 581 F.3d at 1131.

Plaintiff brings this claim based on a violation of 18 U.S.C. 1030(a)(2)(C). (Compl. at 26, ¶ 125.) To successfully bring such a claim, plaintiff must show that defendants: (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that they (3) thereby obtained information (4) from any protected computer. Plaintiff must also show that one of the factors listed under § 1030(c)(4)(A)(1)

---

[2]    Factors in § 1030(c)(4)(A)(1) include: (i) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value; (ii) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals; (iii) physical injury to any person; (iv) a threat to public health or safety; or (v) damage affecting a computer system used by or for a government entity in furtherance of the administration of justice, national defense, or national security. 18 U.S.C. § 1030(c)(4)(A)(1).

24

applies.  <u>See</u> <u>Brekka</u>, 581 F.3d at 1132.

### i.    <u>Intentional Access</u>

Plaintiff alleges that "Roe intentionally accessed valuable Zoom information" stored in a computer, as did Ramsay, Toon, and Neal.  (Compl. at 25, ¶ 120.)  Plaintiff further alleges that defendants accessed the computer to email Power protected information, which may evidence intent to access. (Compl. at 25, ¶ 125.)  Taking the allegations to be true, plaintiff successfully pleads defendants' intentional access of a computer.

### ii.   <u>Lacking or Exceeding Authorization</u>

"The CFAA is an 'anti-hacking' statute and not a misappropriation statute."  <u>Hat World, Inc. v. Kelly</u>, No. CIV. S-12-01591 LKK, 2012 WL 3283486, at *5 (E.D. Cal. Aug. 10, 2012) (quoting <u>United States v. Nosal</u>, 676 F.3d 854, 860 (9th Cir. 2012)).  "The plain language of the CFAA 'target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation.'"  <u>Nosal</u>, 676 F.3d at 863.  Therefore, in the Ninth Circuit, "the phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions."  <u>Id.</u>

Plaintiff alleges that defendants accessed confidential business information "in a manner that exceeded [each defendant's] original authorization."  (Compl. at 25, ¶ 120.) Defendants Roe, Ramsay, Neal, and Toon, however, were each "permitted access to . . . Zoom's trade secrets in Zoom's efforts to facilitate the delivery of Zoom's services . . ., subject to the terms set forth in the Employee Handbook."  (Compl. at 17, ¶¶ 82-85.)  Plaintiff thus pleads that the Employee Handbook

restricted defendants' <u>use</u> of the trade secrets, not defendants'

<u>access</u> to them.

Because plaintiff does not plead that defendants were not authorized to access the confidential information, plaintiff fails to satisfy this prong. The court in <u>Nosal</u> considered facts similar to the ones at hand. Defendant David Nosal worked for an executive search firm. 676 F.3d at 856. "Shortly after [Nosal] left the company, he convinced some of his former colleagues who were still working [there] to help him start a competing business." <u>Id.</u> "The employees [then] used their log-in credentials to download source lists, names and contact information from a confidential database on the company's computer, and then transferred the information to Nosal." <u>Id.</u> Just as plaintiff alleges here, "[t]he employees were authorized to access the database, but [the company] had a policy that forbade disclosing confidential information." <u>Id.</u> The Ninth Circuit rejected the government's argument that the CFAA's phrase "exceeds authorized access" "could refer to someone who has unrestricted physical access to a computer, but is limited in the use to which he can put the information." <u>Id.</u> at 867. Instead, the court found that an employee's unauthorized disclosure or use of information to which an employer has given an employee access is alone insufficient to entertain a claim under CFAA.

This court concluded the same in <u>Farmers Insurance Exchange v. Steele Insurance Agency</u>, No. 2:13-CV-00784-MCE, 2013 WL 3872950, at *19 (E.D. Cal. July 25, 2013). Defendant McCarren "accessed Farmers' computer system to download information regarding Farmers' policyholders, including his entire customer

list, for the purpose of using this information after termination of his Agency Appointment Agreement." Id. at *2.  Because defendant "had permission to access Farmers' confidential proprietary information . . .," this court concluded that "Defendant McCarren did not 'exceed authorized access' by accessing such information, although he may have used such information for an improper purpose." Id. at *19.  See also, Quad Knopf, Inc. v. S. Valley Biology Consulting, LLC, No. 1:13-CV-01262 AWI, 2014 WL 1333999, at *4 (E.D. Cal. Apr. 3, 2014) (finding that defendants did not exceed authorized access where defendants "were not permitted . . . to disseminate the information," but nonetheless "clearly had permission to access the work product or other electronically stored information.").  Accordingly, plaintiff has failed to state facts sufficient to allege the second prong of § 1030(a)(2)(C) against all defendants.  The Complaint therefore does not state a cause of action under the CFAA upon which relief can be granted.

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss (Docket No. 23) be, and the same hereby is, GRANTED IN PART as to the following claims: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) misappropriation of trade secrets in violation of the CUTSA; (4) misappropriation of trade secrets in violation of the DTSA; (5) intentional interference with contractual relations; (6) breach of fiduciary duty against defendants Ramsay, Neal, and Toon; (7) breach of duty of loyalty against defendants Ramsay, Neal, and Toon; (8) unfair business practices; and (9) violation of the

CFAA.

        IT IS FURTHER ORDERED that defendants' Motion to Dismiss be, and the same hereby is, DENIED IN PART as to the following claims: (1) breach of fiduciary duty against defendant Roe; and (2) breach of duty of loyalty against defendant Roe.

        Zoom has twenty days from the date this order is signed to file a First Amended Complaint, if it can do so consistent with this Order.

Dated:  November 8, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE