1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12  ZOOM IMAGING SOLUTIONS, INC.,      No. 2:19-cv-01544 WBS KJN

13              Plaintiff,

14       v.                           MEMORANDUM AND ORDER RE:
                                      PLAINTIFF'S MOTION FOR
15  EDWARD ROE; MAXWELL RAMSAY; JON    PARTIAL SUMMARY JUDGMENT,
    CROSSEN; CORINNE FUERST; ANDREW    DEFENDANTS ROE AND POWER'S
16  ALSWEET, KEVIN TOON; JASON         MOTION FOR SUMMARY JUDGMENT,
    PEEBLER; ABIGAIL NEAL; POWER       AND DEFENDANTS RAMSAY,
17  BUSINESS TECHNOLOGY LLC; BRYAN     CROSSEN, PEEBLER, DAVIS, AND
    DAVIS; MAURA LOPEZ; JEFFREY        LOPEZ'S MOTION FOR SUMMARY
18  ORLANDO; JESSICA HINTZ; and DOES   JUDGMENT
    1 through 100, inclusive,
19
                Defendants.
20

21                        ----oo0oo----

22

23          Plaintiff Zoom Imaging Solutions, Inc. ("Zoom") brings

24  this action against defendants Edward Roe, Maxwell Ramsay, Jon

25  Crossen, Jason Peebler, Bryan Davis, Maura Lopez, and Power

26  Business Technology LLC ("Power"),[1] arising from defendants'

27  ────────────────
          [1]   The parties previously stipulated to voluntary
28  dismissal of defendants Andrew Alsweet, Corinne Fuerst, Jessica
    Hintz, Abigail Neal, Jeffrey Orlando, and Kevin Toon.  (Docket

                              1

allegedly wrongful conduct in violation of defendants' employment
agreements, as well as state and federal law. (First Am. Compl.
("FAC") (Docket No. 61).) Before the court are three motions for
summary judgment: (1) plaintiff's motion for partial summary
judgment (Docket No. 238); (2) defendants Roe and Power's motion
for summary judgment (Docket No. 239); and (3) defendants Ramsay,
Crossen, Peebler, Davis, and Lopez's ("employee defendants")
motion for summary judgment (Docket No. 237).[2]

I.   Factual and Procedural Background

        The undisputed facts are as follows. Zoom provides
"imaging and document solution services to businesses (including
the sale, installation, and servicing of digital print and copy
systems, managed print services, and the sale of software
solutions) . . . and is a vendor for multiple brands of digital
copy, print, and scan equipment." (Defs.' Joint Response to
Pl.'s Statement of Undisputed Facts ("PSUF") ¶ 1 (Docket No. 243-
5).) Zoom is owned by Xerox Business Solutions ("Xerox"). (Id.
¶ 3.) Zoom was the number one dealer for Toshiba in the central
Bay Area in California at the beginning of 2019. (Id. ¶ 5.)

        Roe worked for Zoom from April 1, 2004 until April 3,
2019,[3] and for approximately the last two years of his employment

---

No. 191.)

[2]   Plaintiff requests that the court judicially notice:
(1) Ed Roe's declaration from a different lawsuit in state court;
(2) Power's Articles of Organization; and (3) Power's Seller's
Permit. (Docket No. 238-2.) The court does not rely on these
documents, and therefore, the request is denied as moot.

[3]   Roe argues that he effectively was no longer President
of Zoom starting on or around February 12-19, 2019 because he was
allegedly told he would be let go soon. The relevance of this

2

1  he served as the President of Zoom.  (Id. ¶ 11.)  On March 13,

2  2019, Roe filed Articles of Organization with the California

3  Secretary of State to formally create Power, a company that

4  provides services and equipment similar to Zoom.  (Id. ¶ 59.)

5        Ramsay, Crossen, Peebler, Davis, and Lopez are former

6  Zoom employees and now employed by Power.  (Pl.'s Resp. to

7  Employee Defs.' Statement of Undisputed Facts ("Emp. DSUF") ¶ 1

8  (Docket No. 249-1).)  Ramsay worked as the Regional Sales Manager

9  for Zoom from October 7, 2008 to April 18, 2019, when his Zoom

10 office space closed, and he became a Power employee on April 18,

11 2019.  (Id. ¶ 23; Decl. of Max Ramsay ¶ 3 (Docket No. 237-4).)

12 Crossen worked at Zoom until the spring of 2019, when his Zoom

13 office space closed, and became a Power employee on July 30,

14 2019.  (Decl. of Jon Crossen ¶ 3 (Docket No. 237-9).)  Peebler

15 worked at Zoom until the Spring of 2019, when his Zoom office

16 space closed, and became a Power employee on April 10, 2019.

17 (Decl. of Jason Peebler ¶ 3 (Docket No. 237-5).)  Davis served as

18 the Vice President of Service and Operations for Zoom until the

19 spring of 2019 and then on April 8, 2019 became a Power employee.

20 (Emp. DSUF ¶ 23; Decl. of Bryan Davis ¶ 3 (Docket No. 237-8).)

21 Lopez worked as the Director of Marketing at Zoom from April 1,

22 2010 to April 5, 2019, when her Zoom office space closed, and on

23 April 8, 2019 she became a Power employee.  (Emp. DSUF ¶ 23;

24 Decl. of Maura Lopez ¶ 3 (Docket No. 237-6).)

25        In dispute is the state of Zoom in 2019.  Plaintiff

26 claims that Xerox initiated a plan to save costs by consolidating

27 _____

28 argument is discussed below.

3

1  office space among subsidiaries while continuing service to
2  clients seamlessly.  (PSUF ¶ 29.)  Defendants claim that Xerox's
3  plan in 2019 was to close all Zoom offices and warehouse space,
4  terminate Roe as president, and decrease Zoom's dealership of
5  Toshiba products.  (Pl.'s Resp. to Roe and Power's Statement of
6  Undisputed Facts ("Roe and Power SUF") ¶ 19 (Docket No. 250-1).)

7         Zoom alleges the following claims for relief: (1)
8  breach of contract against Roe based on his executive agreement;
9  (2) breach of contract against Roe, Ramsay, Crossen, Peebler,
10 Davis, and Lopez ("the individual defendants") for the 2018
11 Employee Handbook; (3) breach of contract against Roe, Crossen,
12 and Lopez for the 2013 Employee Handbook; (5)[4] violation of the
13 California Uniform Trade Secrets Act, California Civil Code §
14 3426, against Roe, Ramsay, and Power; (6) violation of the Defend
15 Trade Secrets Act, 18 U.S.C. § 1836, against Roe, Ramsay, and
16 Power; (7) intentional interference with contractual relations
17 against Roe, Ramsay, Lopez, Davis, and Power; (8) violation of
18 the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, against Roe;
19 (9) breach of fiduciary duty against Roe, Ramsay, Lopez, and
20 Davis; and (10) breach of loyalty against Roe, Ramsay, Lopez, and
21 Davis.  Plaintiff also alleges civil conspiracy within its
22 seventh, ninth, and tenth claims.

23         Plaintiff moves for partial summary judgment on claims
24 one, two, three, seven, nine, and ten and civil conspiracy as
25 alleged in the seventh, ninth, and tenth claims.  (Mem. ISO Pl.'s

26

27        [4]    The court dismissed the FAC's fourth and eleventh
   claims in its January 29, 2020 order, and therefore those claims
28 are excluded from this list and order.  (Docket No. 84.)

4

1   Mot. for Summ. J. ("Pl.'s MSJ") at 1 (Docket No. 238-1).)

2   Defendants Roe and Power move for summary judgment on each of the

3   claims against them, or in the alternative partial summary

4   judgment.  (Defs.' Roe and Power's Mot. for Summ. J. ("Roe and

5   Power's MSJ") at 8 (Docket No. 239).)  Defendants Ramsay,

6   Crossen, Lopez, Davis and Peebler move for summary judgment on

7   each of the claims against them, or in the alternative partial

8   summary judgment, and join in Roe and Power's motion for summary

9   judgment.  (Mem. ISO of Defs.' Employee Mot. for Summ. J.

10  ("Employee Defs.' MSJ") at 1 (Docket No. 237-2).)

11  II.  <u>Evidentiary Objections</u>

12         Plaintiff has filed 177 evidentiary objections (Docket

13  Nos. 249-2, 250-2, 253-1), objecting to portions of nine

14  declarations on grounds of lack of foundation, hearsay, lack of

15  personal knowledge, speculation, improper opinion testimony, lack

16  of authentication, vagueness, and argumentative.  Defendants have

17  filed 25 evidentiary objections (Docket Nos. 243-1, 243-2, 243-3,

18  243-4, 254-2, 254-3), objecting to portions of five declarations

19  submitted by plaintiff on the grounds of lack of personal

20  knowledge, relevance, lack of authentication, and hearsay.

21         One can only imagine how many attorney hours were

22  consumed in coming up with this laundry list of objections.  The

23  majority of plaintiff's counsel's 177 objections consist of one-

24  word objections without any explanation or argument.  Such

25  objections are typically found to be "meritless, if not downright

26  frivolous."  <u>Sandoval v. Cnty. of San Diego</u>, 985 F.3d 657, 665

27  (9th Cir. 2021) (holding that defendants' one-word objections at

28  the motion for summary phase were "meritless, if not downright

1   frivolous").  One of Roe and Power's counsel's objections is to

2   an entire declaration submitted by plaintiff which consists of

3   nearly 1300 pages of attached exhibits.  (Docket No. 243-4.)

4          It is inconceivable that the parties could have

5   expected the court to rule on each objection and simultaneously

6   prepare for a meaningful hearing on the merits of their

7   complicated motions for summary judgment on nine claims for

8   relief.  The parties also chose to not meaningfully respond, or

9   for the most part not respond at all, to each other's objections.

10  If the parties could not be bothered to take these objections

11  seriously, they must not have believed that these objections

12  would be considered by the court.  No serious consideration seems

13  to have been given to whether the objections are necessary, or

14  even useful, given the nature of summary judgment motions in

15  general, and the facts of this case.

16         "A party may object that the material cited to support

17  or dispute a fact cannot be presented in a form that would be

18  admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "[T]o

19  survive summary judgment, a party does not necessarily have to

20  produce evidence in a form that would be admissible at trial, as

21  long as the party satisfies the requirements of Federal Rules of

22  Civil Procedure 56."  Fraser v. Goodale, 342 F.3d 1032, 1036-37

23  (9th Cir. 2003) (quoting Block v. City of Los Angeles, 253 F.3d

24  410, 418-19 (9th Cir. 2001)) (quotations omitted).  Even if the

25  non-moving party's evidence is presented in a form that is

26  currently inadmissible, such evidence may be evaluated on a

27  motion for summary judgment so long as the moving party's

28  objections could be cured at trial.  See Burch v. Regents of the

1   *Univ. of Cal.,* 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006).

2           Objections to evidence on the ground that the evidence

3   is irrelevant, speculative, argumentative, vague and ambiguous,

4   or constitutes an improper legal conclusion are all duplicative

5   of the summary judgment standard itself.  See *Sandoval*, 985 F.3d

6   at 665 (9th Cir. 2021) (citing *Burch*, 433 F. Supp. 2d at 1119-

7   20).  A court can award summary judgment only when there is no

8   genuine dispute of *material* fact.  It cannot rely on irrelevant

9   facts, and thus relevance objections are redundant.  Instead of

10  objecting, parties may argue that certain facts are not material.

11  Similarly, statements based on speculation, improper legal

12  conclusions, or argumentative statements, are not *facts* and can

13  only be considered as arguments, not as facts, on

14  a motion for summary judgment.  Instead of challenging the

15  admissibility of this evidence, lawyers may challenge its

16  sufficiency.  Objections on any of these grounds are superfluous,

17  and the court will overrule them.

18          While the parties use various phrases to describe their

19  remaining objections (lack of foundation, lack of personal

20  knowledge, lack of authentication, and hearsay) the bulk of

21  the objections essentially debate the accuracy and relevance of

22  the opposing party's documents as submitted into the record.  As

23  explained above, these objections deal not with whether documents

24  are *admissible* but whether the facts contained therein are true

25  and relevant.  The court always considers the relevance of the

26  facts as it considers the parties' arguments, and the court must

27  take all disputed facts in the light most favorable to the non-

28  moving party, but the court need not rule on the admissibility of

1   such facts when no reason has been shown why they would not be

2   admissible at trial.  Further, many of the "objected to documents

3   either reflect personal knowledge of individuals who could be

4   called to testify at trial or will likely be admissible at trial"

5   for other reasons.  See Sandoval, 985 F.3d at 666.

6        In the interest of brevity, as the parties are aware of

7   the substance of their objections and the grounds asserted in

8   support of each objection, the court will not review the

9   substance or grounds of each of the individual objections here.

10  The parties' objections are all overruled.

11  III. Legal Standard

12       A party seeking summary judgment bears the initial

13  burden of demonstrating the absence of a genuine issue of

14  material fact as to the basis for the motion.  Celotex Corp. v.

15  Catrett, 477 U.S. 317, 323 (1986).  A material fact is one that

16  could affect the outcome of the suit, and a genuine issue is one

17  that could permit a reasonable trier of fact to enter a verdict

18  in the non-moving party's favor.  Anderson v. Liberty Lobby,

19  Inc., 477 U.S. 242, 248 (1986).  The party moving for summary

20  judgment can satisfy its burden by presenting evidence that

21  negates an essential element of the non-moving party's

22  case.  Celotex Corp, 477 U.S. at 322–23.  Alternatively, the

23  movant can demonstrate that the non-moving party cannot provide

24  evidence to support an essential element upon which it will bear

25  the burden of proof at trial.  Id.  Summary judgment is

26  appropriate when, viewing the evidence in the light most

27  favorable to the non-moving party, there is no genuine dispute as

28  to any material fact.  Acosta v. City Nat'l Corp., 922 F.3d 880,

1  885 (9th Cir. 2019).

2          Where, as here, parties submit cross-motions for

3  summary judgment, "each motion must be considered on its own

4  merits."  Fair Hous. Council of Riverside Cnty., Inc. v.

5  RiversideTwo, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal

6  citations and modifications omitted).  "[T]he court must consider

7  the appropriate evidentiary material identified and submitted in

8  support of both motions, and in opposition to both motions,

9  before ruling on each of them."  Tulalip Tribes of Wash. v.

10 Washington, 783 F.3d 1151, 1156 (9th Cir. 2015).  Accordingly, in

11 each instance, the court will view the evidence in the light most

12 favorable to the non-moving party and draw all inferences in its

13 favor.  ACLU of Nev. v. City of Las Vegas, 333 F.3d 1092, 1097

14 (9th Cir. 2003) (citations omitted).

15 IV.  Discussion

16      A.   Claim One: Breach of Contract against Roe

17          Plaintiff and Roe move for summary judgment on the

18 first claim.  Plaintiff's FAC alleges Roe breached clause 4(b) in

19 his executive agreement by using plaintiff's confidential

20 information to service, assist, and solicit customers that

21 previously employed Zoom and solicit employees to leave Zoom

22 within two years of the end of his employment with Zoom.  (FAC ¶¶

23 60, 65, 66; Decl. of Meg Paulding, Ex. 1(y) ("Executive

24 Agreement")[5] (Docket No. 238-8).)  However, plaintiff now argues

25

26          [5]   The parties dispute whether this is the actual version
   of the operative executive agreement at the time Roe left Zoom.
27 However, this dispute is irrelevant to the grounds upon which the
   court decides the motions on plaintiff's first claim.
28

1  that Roe breached different provisions of the executive agreement

2  pertaining to Roe's alleged executive duties owed to Zoom.

3  (Pl.'s Opp'n to Roe and Power's Mot. at 17 (Docket No. 250);

4  Pl.'s MSJ at 13.)

5      The FAC specifically quotes clause 4(b) of the

6  executive agreement as the clause which plaintiff sought to

7  enforce, (FAC ¶ 60; Executive Agreement ¶ 4(b)), and states that

8  Roe's agreement to comply with this clause "constituted a valid

9  and binding contract" between Roe and Zoom.  (FAC ¶ 62.)  The FAC

10 then refers to this "contract" when alleging how Roe breached it

11 and does not plead any other portions of the executive agreement

12 that Roe allegedly breached.  (See FAC ¶¶ 59-72.)

13     Plaintiff improperly argues its breach of contract

14 claim against Roe based on a new theory at the motion for summary

15 judgment stage.  See Chavez v. Wynar, 536 F. Supp. 3d 517, 535

16 (N.D. Cal. 2021) ("Plaintiffs may not raise a new claim or theory

17 of liability for the first time in response to a motion for

18 summary judgment.").  Therefore, the court will not consider

19 plaintiff's arguments about Roe's alleged breach of clauses other

20 than clause 4(b).

21     To the extent plaintiff's breach of contract claim is

22 based on clause 4(b),[6] plaintiff now abandons that theory and

23 presents no argument or evidence on it.  (Pl.'s Opp'n to Roe and

24 Power's Mot. at 20, 22.)

25     Accordingly, the court will deny plaintiff's motion for

26

27     [6]  The parties dispute whether this clause constitutes a
   "non-compete" clause.  As discussed, plaintiff has abandoned the
   breach of contract theory based on this clause, and therefore,
28 the court will not address that dispute.

1    summary judgment and grant defendant Roe's motion for summary

2    judgment on the first claim.

3        B.   Claims Two and Three: Breach of Contract against
     Individual Defendants

4

5              Plaintiff and the individual defendants move for

6    summary judgment on the second and third claims.  In California,

7    to allege a cause of action for breach of contract, plaintiff

8    must plead "(1) the existence of a contract, (2) defendant's

9    breach, (3) plaintiff's performance or excuse for nonperformance,

10   and (4) the resulting damages to the plaintiff."  Oasis W.

11   Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).  Plaintiff

12   alleges that all individual defendants breached provisions of the

13   employee handbook pertaining to safeguarding confidential

14   information.  (FAC ¶ 76; Decl. of Meg Paulding, Ex. 1(i) ("2018

15   Employee Handbook") (Docket Nos. 238-7, 238-8); Decl. of Meg

16   Paulding, Ex. 1(h) ("2013 Employee Handbook) (Docket No. 238-8).)

17   Plaintiff's second claim against all individual defendants is

18   based on the 2018 employee handbook.  Plaintiff's third claim

19   against defendants Roe, Crossen, and Lopez is based on the 2013

20   employee handbook.

21             The individual defendants argue that neither the 2013

22   nor 2018 employee handbook is a contract, to which plaintiff

23   responds that it is an implied-in-fact contract.  (Employee

24   Defs.' MSJ at 3-5; Roe and Power's MSJ at 40-41; Pl's Opp'n to

25   Employee Defs.' Mot. at 11 (Docket No. 249).)

26             "Parties can form implied contracts, the existence and

27   terms of which are manifested by conduct."  SMC Networks Inc. v.

28   Hitron Techs. Inc., No. SACV 12-1293, 2013 WL 12114104, at *3

1  (C.D. Cal. Nov. 13, 2013) (quoting Binder v. Aetna Life Ins. Co.,

2  75 Cal. App. 4th 832, 849 (2d Dist. 1999)) (quotations omitted).

3  There must be a "meeting of minds or an agreement" and "[w]hile

4  an implied in fact contract may be inferred from the conduct,

5  situation, or mutual relation of the parties, the very heart of

6  this kind of agreement is an intent to promise." Id. (quoting

7  Div. of Labor Law Enf't v. Transpacific Transp. Co., 69 Cal. App.

8  3d 268, 275 (1st Dist. 1977)).  Whether an implied-in-fact

9  contract is created by an employee handbook is "a factual

10  question in each case." Asmus v. Pac. Bell, 23 Cal. 4th 1, 11

11  (2000).

12          The circumstances in this case do not show that the

13  employee handbook was a contract between each of the individual

14  defendants and Zoom.  Upon receipt of the employee handbook, the

15  individual defendants, except for Davis, signed a "Confirmation

16  of Receipt."  (2018 Employee Handbook at 80; 2013 Employee

17  Handbook at 48.)  The confirmations of receipt for both handbooks

18  are nearly identical and do not contain any language

19  demonstrating an intent to promise or the individual defendants'

20  intent to be bound by the handbooks.  (2018 Employee Handbook at

21  80; 2013 Employee Handbook at 48.)  The confirmation states, in

22  relevant part: "I have received my copy of the company's Employee

23  Handbook. I understand and agree that it is my responsibility to

24  read and familiarize myself with the policies and procedures

25  contained in the handbook." (See 2018 Employee Handbook at 80;

26  2013 Employee Handbook at 48.)  This statement supports that the

27  individual defendants received the handbook, not that they

28

1   entered into a contract to adhere to the terms of the handbook.[7]

2        Further, plaintiff's past Human Resource's Director

3   testified that some of the policies in the handbook were not

4   meant to "restrict" certain conduct, but merely to "discourage"

5   it.  (See Decl. of Thomas Woods ISO Opp'n, Ex. F, Dep. of Amy

6   Breshears, 84:23-85:4 (Docket No. 243-7).)  If Zoom's own Human

7   Resource's Director did not see each of the policies in the

8   employee handbook as something the employees must be bound by, it

9   follows that there was no "meeting of minds or an agreement" to

10  adhere to the handbook's policies.  See SMC Networks, 2013 WL

11  12114104, at *3.

12       The record also demonstrates that not all of the

13  individual defendants signed confirmations of receipt for the

14  updated 2018 employee handbook, although it states that it

15  supersedes all previously issued handbooks.  (2018 Employee

16  Handbook at 5; PSUF ¶¶ 18, 20, 28 (Roe and Crossen signed the

17  2013, but not 2018, employee handbook confirmation of receipt,

18  and Davis did not sign any employee handbook confirmation of

19  receipt).)  Therefore, if not all individual defendants even

20  acknowledged receipt of the operative handbook, it cannot be

21  inferred from the parties' conduct that an implied-in-fact

22  contract was created.  See SMC Networks, 2013 WL 12114104, at *3.

23       The record does not demonstrate that the 2013 or 2018

24

25       [7]    Notably, a prior confirmation of receipt attached to a
    2006 version of Zoom's employee handbook stated that the signing

26  employee acknowledged he or she was to "read, understand, and
    adhere to company policies."  (Decl. of Martin Jensen, Ex. A

27  (Docket No. 237-7) (emphasis added).)  That language is not part
    of the 2013 or 2018 confirmations.

28

13

1  handbook is a "binding" contract, but instead was "meant merely

2  to provide guidelines to employees." See id. (holding that an

3  employee handbook was not a binding contract because the evidence

4  demonstrated that it contained guidelines for the company).

5        Plaintiff has not proven an essential element of its

6  breach of contract claims, the existence of a contract, and the

7  individual defendants have shown that plaintiff cannot present

8  evidence to prove that element.  Therefore, summary judgment will

9  be granted in favor of the individual defendants on plaintiff's

10  second and third claims, and plaintiff's motion for summary

11  judgment on the same will be denied.

12     C.   Claims Five and Six: Trade Secret Misappropriation
    against Roe, Ramsay, and Power

13

14        Defendants Roe, Ramsay, and Power move for summary

15  judgment on the fifth and sixth claims.  The court will analyze

16  the Defend Trade Secrets Act ("DTSA") and California Uniform

17  Trade Secrets Act ("CUTSA") claims together as the "elements are

18  substantially similar[:]" (1) the existence of a trade secret,

19  and (2) misappropriation of that trade secret.  See InteliClear,

20  LLC v. ETC Global Holdings, Inc., 978 F. 3d 653, 657 (9th Cir.

21  2020).

22        1.   Ramsay

23        Regardless of whether the information at issue is a

24  trade secret, plaintiff presents no evidence to create a genuine

25  dispute of material fact that Ramsay misappropriated that

26  information.  Plaintiff's evidence only shows that Ramsay was a

27  "sales rep" for certain prospective customers of Power.  (See

28  Decl. of David A. Garcia ISO Opp'n, Ex. 1 (Docket No. 249-3).)

1   Plaintiff's cited evidence makes no showing of misappropriation

2   by Ramsay, but instead only purports to demonstrate

3   misappropriation by others.   (See id.; Pl.'s Opp'n to Employee

4   Defs.' Mot. at 22 (Docket No. 249) (bullet point list of evidence

5   in support of plaintiff's argument only describes conduct by

6   other individuals and Power, not Ramsay).)   Accordingly, Ramsay's

7   motion for summary judgment on the fifth and sixth claims for

8   trade secret misappropriation will be granted.

9               2.   Roe and Power

10              Roe and Power argue that the information at issue is

11  not a trade secret.   A trade secret is "information, including a

12  formula, pattern, compilation, program, device, method,

13  technique, or process, that: (1) derives independent economic

14  value, actual or potential, from not being generally known to the

15  public or to other persons who can obtain economic value from its

16  disclosure or use; and (2) is the subject of efforts that are

17  reasonable under the circumstances to maintain its secrecy."   See

18  Cal. Civ. Code § 3426.1(d); 18 U.S.C. § 1839.

19              Plaintiff alleges that the trade secrets at issue

20  consist of (1) customer lists, which contain specifics on contact

21  information, underlying costs, pricing, and profit margin for

22  each customer; (2) the duration and expiration dates of service

23  contracts sold and serviced by Zoom; (3) Zoom's employee costs

24  including rates of insurance premiums and salary and its impact

25  on Zoom's product costs; and (4) the specific costs and prices of

26  maintenance services within the financed loan amounts for Zoom

27  equipment sold to customers. (FAC ¶¶ 213, 230; Pl.'s

28  Identification of Trade Secrets (Docket No. 36-1).)

1   On categories three and four, employee costs and the

2 specific costs and prices of maintenance services, plaintiff

3 presents no evidence to create a genuine dispute that this

4 information is a trade secret.  Therefore, summary judgment will

5 be granted in favor of Roe and Power on the fifth and sixth

6 claims to the extent they are based on these two categories of

7 information.

8   A customer list may qualify as a trade secret because

9 of its "economic value" when its "disclosure would allow a

10 competitor to direct its sales efforts to those customers who

11 have already shown a willingness to use a unique type of service

12 or product as opposed to a list of people who only might be

13 interested and [plaintiff] took reasonable steps to protect this

14 information."  Hanger Prosthetics & Orthotics, Inc. v. Capstone

15 Orthopedic, Inc., 556 F. Supp. 2d 1122, 1135 (E.D. Cal. 2008).

16   Here, plaintiff has identified facts showing that the

17 customer information had economic value and Zoom made reasonable

18 efforts to maintain its secrecy, therefore creating a genuine

19 issue of material fact.  The customer information in its compiled

20 form not only provides a narrowed list of customers who have

21 "already shown a willingness to use" imaging and document

22 solution services, but also allows Zoom to "tailor its service

23 contracts and pricing to the unique needs of its customers."  See

24 MAI Sys. Corp. v. Peak Comput., Inc., 991 F.2d 511, 521 (9th Cir.

25 1993) (holding that a customer database, assembled over many

26 years which allowed the defendant competitor to direct its sales

27 efforts to those potential customers that were already using

28 plaintiff's services, qualified as a trade secret).

16

1          Plaintiff raises a genuine dispute of material fact

2     over the economic value in this form of compiled customer

3     information because it allows a company to easily identify

4     clients, know whom to contact, and what services to offer at what

5     price.  Plaintiff makes a showing that this customer list may not

6     be "readily ascertainable through public sources, such as

7     business directories," but rather one which Zoom "expended time

8     and effort" on to "identify[] customers with particular needs or

9     characteristics."  See Pyro Spectaculars N., Inc. v. Souza, 861

10    F. Supp. 2d 1079, 1088 (E.D. Cal. 2012).

11         Plaintiff also identifies facts to demonstrate that it

12    took reasonable measures to maintain secrecy over the customer

13    information.  Plaintiff's employee handbook contained a policy

14    for employees to keep "customer lists, [and] knowledge about

15    customers (documents, requirements, preferences, history, etc)"

16    confidential.  (2018 Employee Handbook at 36.)  Zoom employees

17    could only access customer information for those accounts which

18    were assigned to them.  (PSUF ¶¶ 8, 10.)  Zoom required passwords

19    for email access, databases, and a software that contained Zoom's

20    sale and lease agreements.  (Id. ¶ 9.)

21         Plaintiff also presents evidence to create a genuine

22    issue of material fact as to whether Roe and Power

23    misappropriated the customer information.  "It is well

24    recognized" that "[c]ircumstantial evidence is particularly

25    appropriate in trade secret cases."  See UniRAM Tech., Inc. v.

26    Taiwan Semiconductor Mfg. Co., 617 F. Supp. 2d 938, 944 (N.D.

27    Cal. 2007) (holding that the plaintiff had "offered

28    circumstantial evidence sufficient to create a genuine issue of

1  fact for trial" on a trade secret misappropriation claim).

2          Plaintiff presents evidence that Power employees, who

3  were previously employed by Zoom, created customer lists for

4  Power, consisting of customers they had serviced at Zoom, that

5  included key person and contact information, pricing, and service

6  history.  (Decl. of Garcia ISO Opp'n to Emp. Defs.' Mot., Ex. 1.)

7  Further, Crossen was seen boxing up Zoom customer files before

8  resigning from Zoom and starting employment at Power.  (PSUF ¶

9  101; Decl. of Garcia, Ex. 9, Decl. of Amy Breshears ¶ 11 (Docket

10 No. 238-5).)  Plaintiff submitted text messages by Roe in which

11 he asked a Zoom employee to "pull two buyouts" for two different

12 Zoom customers after the employee sent him an invoice for another

13 customer.  (PSUF ¶ 130.)  Power also took "hundreds of Zoom

14 customers."  (Id. ¶ 97.)  Whether or not these circumstances show

15 misappropriation by Power and Roe is a question for the jury.

16         Accordingly, Roe and Power's motion for summary

17 judgment will be denied because plaintiff has presented evidence

18 that, when viewed in the light most favorable to plaintiff,

19 creates a genuine dispute as to whether the customer information

20 was a trade secret and whether it was misappropriated.

21     D.   Claim Seven: Intentional Interference with Contractual
       Relations against Roe, Ramsay, Lopez, Davis, and Power
22

23         Plaintiff and defendants Roe, Ramsay, Lopez, Davis, and

24 Power move for summary judgment on plaintiff's seventh claim.  A

25 claim for intentional interference with contractual relations

26 requires plaintiff to prove "(1) a valid contract between

27 plaintiff and a third party; (2) defendant's knowledge of this

28

1  contract; (3) defendant's intentional acts designed to induce a

2  breach or disruption of the contractual relationship; (4) actual

3  breach or disruption of the contractual relationship; and (5)

4  resulting damage."  <u>Walters v. Fid. Mortg. of CA</u>, 730 F. Supp. 2d

5  1185, 1210 (E.D. Cal. 2010).

6          Plaintiff identifies 366 customers who were formerly

7  Zoom customers and are now Power customers.  (Decl. of Joseph

8  Egan ¶ 7, Ex. B (Docket No. 238-9).)  Defendants do not dispute

9  that these 366 customers are now Power customers.  (PSUF ¶ 135.)

10 Plaintiff argues that defendants intentionally acted to disrupt

11 its contracts with these customers by "unbundling" service

12 contracts from equipment contracts at Zoom so they could easily

13 solicit customers at Power, obtaining a dealer agreement with

14 Toshiba (Zoom's largest supplier), assisting with the formation

15 of Power, hiring key Zoom personnel, and preparing letters and

16 correspondence informing customers that Zoom was closing its

17 business.  (Pl.'s MSJ at 22; Pl.'s Opp'n to Employee Defs.' Mot.

18 at 24.)

19         However, plaintiff fails to prove defendants actually

20 interfered with any contract that resulted in damages for

21 plaintiff.  Of the 366 Power customers that were Zoom customers,

22 plaintiff does not specify whether any customer on the list had

23 an active contract with Zoom at the time that it became a Power

24 customer.  If these customers finished their contractual term

25 with Zoom or had at-will contracts, then there would be no

26 disruption to a contract or damages to Zoom when these customers

27 chose to leave Zoom for another competitor.

28         Accordingly, plaintiff fails to present evidence of an

1   essential element of its claim, and therefore, summary judgment

2   will be granted in favor of Power, Roe, Ramsay, Lopez, and Davis

3   on plaintiff's seventh claim, and plaintiff's motion for summary

4   judgment on the same will be denied.

5        E.   Claim Eight: Computer Fraud and Abuse Act against Roe

6            Roe moves for summary judgment on plaintiff's eighth

7   claim.  The Computer Fraud and Abuse Act (CFAA), 18 U.S.C § 1030,

8   "prohibits a number of different computer crimes, the majority of

9   which involve accessing computers without authorization or in

10  excess of authorization, and then taking specified forbidden

11  actions, ranging from obtaining information to damaging a

12  computer or computer data."  LVRC Holdings LLC v. Brekka, 581

13  F.3d 1127, 1131 (9th Cir. 2009).  The CFAA permits "[a]ny person

14  who suffers damage or loss by reason of a violation of this

15  section [to] maintain a civil action against the violator to

16  obtain compensatory damages and injunctive relief or other

17  equitable relief."  18 U.S.C. § 1030(g).

18           Plaintiff brings this claim based on a violation of 18

19  U.S.C. § 1030(a)(2)(C) under which plaintiff must prove that Roe:

20  "(1) intentionally accessed a computer; (2) without authorization

21  or exceeding authorized access; and that he (3) thereby obtained

22  information (4) from any protected computer (if the conduct

23  involved an interstate or foreign communication), and that (5)

24  there was loss to one or more persons during any one-year period

25  aggregating at least $5,000 in value."  LVRC Holdings LLC, 581

26  F.3d at 1132.

27           Plaintiff alleges that Roe knowingly accessed Zoom's

28  protected computer system without permission, in excess of his

                              20

authorized scope, to obtain Zoom customer account details and communications which resulted in financial loss and reputational damage.  (FAC ¶¶ 256-59.)  However, plaintiff's presented evidence does not create a genuine issue of material fact about whether Roe "accessed a computer without authorization" or "exceed[ed] authorized access."

Plaintiff presents a text conversation between Roe, after he left Zoom, and a Zoom employee.  In the conversation, the Zoom employee sent a phone number for an alleged Zoom customer and a photograph of a printed Zoom invoice for a customer, and Roe asked the employee to "pull two buyouts" for two customers -- to which the employee did not respond.  (Decl. of Garcia, Ex. 22 (Docket No. 238-7).)  This evidence does not raise a genuine dispute about whether Roe accessed a computer without authorization or exceeded his authorized access.  The Zoom employee, and in turn Roe, could have obtained the phone number and invoice without accessing any computer.

Plaintiff also cites to an email that Roe received and then forwarded to his wife that allegedly contains confidential information on pay.  However, as this court explained in its November 8, 2019 Order on Roe's Motion to Dismiss (Docket No. 53), the Ninth Circuit has held that an employee's unauthorized disclosure or use of information to which an employer has given an employee access is alone insufficient to prove that the employee exceeded authorized access.  See United States v. Nosal, 676 F.3d 854, 863-64 (9th Cir. 2012).  "[T]he phrase 'exceeds unauthorized access' in the CFAA does not extend to violations of use restrictions."  Id. at 863.  Roe had authorized access to

1  this email, and the manner in which he used it does not extend to
2  a violation of the CFAA.

3      Further, in its opposition plaintiff argues that <u>Power</u>
4  accessed information without authorization.  However, plaintiff
5  only brought this claim against Roe, and therefore, its arguments
6  pertaining to Power are irrelevant.

7      Accordingly, Roe's motion for summary judgment on
8  plaintiff's eighth claim will be granted.

9      F.   <u>Claim Nine: Breach of Fiduciary Duty against Roe,</u>
10  <u>Ramsay, Lopez, and Davis</u>

11      "The elements of a breach of fiduciary duty claim are
12  (1) existence of a fiduciary relationship; (2) breach of the
13  fiduciary duty; and (3) damage proximately caused by that
14  breach."  <u>Lane v. Vitek Real Estate Indus. Grp.</u>, 713 F. Supp. 2d
15  1092, 1104 (E.D. Cal. 2010).

16      1.   <u>Ramsay, Lopez, and Davis</u>

17      Defendants Ramsay, Lopez, and Davis argue that no
18  fiduciary relationship existed between them and Zoom.  "Under
19  California law, a fiduciary duty exists where an employee
20  participates in the management of a corporation and exercises
21  discretionary authority, while an employee who exercises no
22  management authority is not a fiduciary."  <u>WeRide Corp. v. Kun</u>
23  <u>Huang</u>, 379 F. Supp. 3d 834, 852 (N.D. Cal. 2019) (citing <u>Iconix</u>
24  <u>v. Tokuda</u>, 457 F. Supp. 2d 969, 981 (N.D. Cal. 2006)); <u>see</u> <u>GAB</u>
25  <u>Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal.
26  App. 4th 409, 420-21 (4th Dist. 2000) (holding the same),
27  <u>overruled on other grounds</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140
28  (2004).  "Whether a particular officer participates in management

1   is a question of fact[,] . . . once this factual prerequisite is

2   established, the law imposes a fiduciary duty." <u>GAB</u>, 83 Cal.

3   App. 4th at 421.

a.   <u>Ramsay</u>

5        It is undisputed that Ramsay was the Regional Sales

6   Manager for Zoom and was responsible for overseeing the sale of

7   equipment and services to customers, searching for more

8   customers, and overseeing a team of sales representatives.  (PSUF

9   ¶ 45.)  The record contains no evidence about how large the team

10  was, whether he controlled the budget for the team, or specifics

11  about the type of management authority he had.  <u>See</u> <u>WeRide</u>, 379

12  F. Supp. 3d at 853 (holding fiduciary duty existed where the

13  "Director of Hardware" managed a "team of 10-12 engineers" and

14  "controlled the team's budget"); <u>Iconix</u>, 457 F. Supp. 2d at 981-

15  82 (holding a fiduciary duty existed because the employee managed

16  the largest department at the company, had hiring authority,

17  established the overall objectives and initiatives, and 16 of the

18  company's 24 employees reported to him).  Plaintiff's evidence is

19  insufficient to prove that Ramsay owed Zoom a fiduciary duty.

b.   <u>Lopez</u>

21       It is undisputed that Lopez was the Director of

22  Marketing at Zoom and "her duties included preparing marketing

23  material and communicating with Roe."  (PSUF ¶ 99.)  Plaintiff

24  argues that Lopez "assisted with new hiring of personnel in the

25  sales team," however, the evidence plaintiff cites in support

26  states that Lopez assisted with hiring in her new role at Power,

27  not Zoom. (<u>Compare</u> Pl.'s Reply at 19 (Docket No. 253) <u>with</u> PSUF ¶

28  100.)  The record is insufficient to establish that Lopez

1  participated in management or exercised discretionary authority,
2  and therefore, there is no fiduciary relationship between Lopez
3  and Zoom.

4                    c.   Davis

5          It is undisputed that Davis "served as the Vice
6  President of Service and Operations for Zoom, in charge of the
7  continued financial success of services and operations for Zoom."
8  (PSUF ¶ 88.)  This vague statement of Davis' duties is
9  insufficient to demonstrate what his role was in the
10 "participation of management" and whether he had "discretionary
11 authority."  GAB, 83 Cal. App. 4th at 421-22 (holding that a
12 fiduciary relationship existed because the employee made
13 "decisions and commitments on complex and important issues," had
14 "authority to develop and/or approve policies," controlled a $20
15 million budget, and had "final responsibility" on the
16 "supervision and management of others").  Therefore, there is no
17 fiduciary relationship between Davis and Zoom.

18              2.   Breach of Fiduciary Duty Claim against Roe

19         As an initial matter, Roe argues that even though he
20 was President of Zoom, on or about February 12, 2019 he ceased
21 owing a fiduciary duty to Zoom. (Defs.' Joint Opp'n at 33.)  He
22 was allegedly informed by his direct supervisor, George
23 Cavallaro, the Senior Vice President at Xerox, that Zoom offices
24 would close down and that Roe would be terminated.  (Roe and
25 Power SUF ¶¶ 19, 21; Decl. of Edward Roe ¶ 5 (Docket No. 239-2).)
26 Roe argues that he stayed with Zoom until April 3, 2019 because
27 Cavallaro asked him to help with the transition, but that
28 effectively he no longer had "the discretion to run the business

                                 24

1  he had before."  (Roe and Power SUF ¶ 21; Defs.' Joint Opp'n at

2  34.)

3          "Even when an officer loses power or authority, that

4  officer still owes a fiduciary duty to the corporation.  To

5  divest himself [] of the duty, the officer mut resign the

6  office." <u>GAB</u>, 83 Cal. App. 4th at 421.  Therefore, even if Roe

7  was told he would be terminated, he officially remained President

8  of Zoom and owed a fiduciary duty until April 3, 2019.

9          Plaintiff argues that Roe breached his fiduciary duty

10 by: (1) forming Power on March 13, 2019; (2) soliciting business

11 from Toshiba in February and March 2019; (3) obtaining a line of

12 credit on behalf of Power while still at Zoom; (4) instructing

13 Zoom employees to find real estate space for Power while he was

14 still at Zoom; (5) creating a business plan on behalf of Power to

15 submit to Toshiba while at Zoom; and (6) using Zoom's

16 "confidential employee salary information" to recruit Zoom

17 employees to work at Power.  (Pl.'s MSJ at 18.)

18         Roe had a duty to "protect the interests of [Zoom],

19 [and] also to refrain from doing anything that would work injury

20 to the corporation, or [] deprive it of profit or advantage which

21 his skill and ability might properly bring to it." <u>Bancroft-</u>

22 <u>Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 345 (1966).  The Ninth

23 Circuit explained that "[w]hether or not a corporate opportunity

24 exists is largely a question of fact to be determined from the

25 objective facts and surrounding circumstances existing at the

26 time the opportunity arises." <u>Robinson, Leatham & Nelson, Inc.</u>

27 <u>v. Nelson</u>, 109 F.3d 1388, 1393 (9th Cir. 1997) (quotations

28 omitted).  "The mere fact that the officer makes preparations to

1  compete before he resigns his office is not sufficient to

2  constitute a breach of duty.  It is the nature of his

3  preparations which is significant." Bancroft, 64 Cal. 2d at 346.

4        Roe presents evidence that Zoom was set to close all

5  offices and the business, and that he was being terminated.  (Roe

6  and Power SUF ¶¶ 19, 20; Decl of Garcia, Ex. 9, Decl. of Amy

7  Breshears ¶ 3.)  Employees also state they left Zoom because of

8  the plan to close Zoom offices and change conditions of their

9  employment.  (Roe and Power SUF ¶ 24.)  Defendants argue that

10 though Zoom still exists in name, it does little business.

11 However, Zoom presents evidence that its services and employees

12 would not be impacted by the plan to consolidate office space,

13 and that the business itself was not closing.  (Decl of Garcia,

14 Ex. 9, Decl. of Amy Breshears ¶¶ 6-7.)  Whether Roe usurped a

15 corporate opportunity is dependent on the state of Zoom at the

16 time of his creation of Power.  There is a genuine dispute of

17 material fact about the "surrounding circumstances at the time"

18 of Roe's alleged conduct.[8]

19        In conclusion, Ramsay, Lopez, and Davis' motion for

20 summary judgment on plaintiff's ninth claim will be granted.

21 Plaintiff and Roe's motions for summary judgment as to the same

22 will be denied.

23    G.   Claim Ten: Breach of Loyalty against Roe, Ramsay,
   Lopez, and Davis
24

25        Plaintiff and defendants Roe, Ramsay, Lopez, and Davis

26 ─────────────────

27     [8]   During oral argument, plaintiff's counsel cited Johnson
   v. Superior Court, 38 Cal. App. 4th 463 (1995) in support of his
   argument that Roe's conduct breached his fiduciary duty.  Upon
28 review, Johnson is inapposite to the issue before the court.

1   move for summary judgment on the tenth claim.  Plaintiff must

2   prove: "(1) the existence of a relationship giving rise to a duty

3   of loyalty; (2) one or more breaches of that duty; and (3) damage

4   proximately caused by that breach."  E.D.C. Techs., Inc. v.

5   Seidel, 216 F. Supp. 3d 1012, 1016 (N.D. Cal. 2016).

6        Plaintiff pleads the claims for breach of fiduciary

7   duty and breach of loyalty separately but analyzes them together.

8   (Pl.'s MSJ at 20.)  "Although they are similar, breach of

9   fiduciary duty and breach of the duty of loyalty are two distinct

10  claims under California Law."  E.D.C. Techs., 216 F. Supp. at

11  1016.  An employer may bring a duty of loyalty claim against a

12  non-fiduciary employee as "California courts generally have not

13  distinguished between managerial employees and lower-level

14  employees."  Id.

15       California Labor Code section 2863 imposes on employees

16  a duty of loyalty to their employer.  Section 2863 requires any

17  "employee who has any business to transact in his own account,

18  similar to that entrusted to him by his employer, [to] always

19  give the preference to the business of the employer."  Therefore,

20  Roe, Ramsay, Lopez, and Davis had relationships with Zoom that

21  gave rise to a duty of loyalty, regardless of whether they each

22  had a fiduciary relationship with Zoom.

23       Plaintiff argues that Roe breached the duty of loyalty

24  in the same manner that he breached his fiduciary duty.  As

25  discussed above, there is a genuine dispute of material fact

26  about whether Zoom was planning to close its business or simply

27  consolidate office space at the time that Roe created Power.  If

28  Zoom did indeed plan to close operations, it follows that Roe

27

1    would not be taking business away from Zoom in violation of his

2    duty of loyalty.  Therefore, a genuine dispute of fact exists

3    pertinent to whether Roe breached his duty of loyalty.

4         Plaintiff presents evidence that Ramsay and Davis were

5    taking steps to form Power while employed by Zoom, including

6    finding real estate space, setting up payroll, registering the

7    Power website domain name, and creating a business plan to submit

8    to Toshiba on behalf of Power.  (PSUF ¶¶ 46, 71, 90, 112, 117,

9    119, 121-23, 127.)  However, if these steps damaged Zoom in any

10   manner is in dispute given the opposing evidence submitted by

11   both sides as to the state of Zoom's future.  Therefore, there is

12   a genuine dispute of material fact relevant to whether Ramsay and

13   Davis breached their duty of loyalty.

14        For Lopez, the only evidence presented by plaintiff

15   shows that Lopez was aware that certain Power employees were

16   previously employees of Zoom.  (PSUF ¶ 17, 99-100 (citing Decl.

17   of Garcia, Ex. 19, Dep. of Maura Lopez).)  This evidence does not

18   demonstrate that Lopez used Zoom's allegedly confidential

19   compensation data to poach employees, nor does it prove that she

20   breached her duty of loyalty to Zoom.  (Pl.'s Opp'n to Employee

21   Defs.' Mot. at 27.)

22        For the foregoing reasons, Lopez's motion for summary

23   judgment on plaintiff's tenth claim will be granted.  Plaintiff

24   and defendants Roe, Ramsay, and Davis' motions for summary

25   judgment on the same will be denied.

26   H.   Civil Conspiracy

27        Within its seventh, ninth, and tenth claims, plaintiff

28   alleges that defendants Roe, Ramsay, Lopez, and Davis were part

of a civil conspiracy to commit the alleged violation of Zoom's rights.  (FAC ¶¶ 248, 265, 276.)  Civil "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its preparation."  Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994).  Under California law, a party may be vicariously liable for another's tort in a civil conspiracy where the plaintiff shows "(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design."  Rusheen v. Cohen, 37 Cal. 4th 1048, 1062 (2006) (citing Doctors' Co. v. Superior Court, 49 Cal. 3d 39, 44 (1989)).

A claim for civil conspiracy is a derivative action that can only succeed when based on an independent tortious act. Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1228 (9th Cir. 1997).  Defendants will be granted summary judgment on plaintiff's seventh claim and therefore no liability based on civil conspiracy can exist for that claim.

For the ninth claim, it has been established that the employee defendants did not have a fiduciary duty toward Zoom, and therefore, they cannot be liable for the claim based on a theory of conspiracy.  See Applied Equip., 7 Cal. 4th at 511 ("[T]ort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty.")

For the tenth claim, plaintiff presents no undisputed

1  evidence of the formation and operation of a "common plan or

2  design in [] preparation" of the tort between Roe, Ramsay, Lopez,

3  and Davis.   See Hanger Prosthetics & Orthotics, 556 F. Supp. 2d

4  at 1139.   Plaintiff must prove that Roe, Ramsay, Lopez, and Davis

5  had "actual knowledge that a tort is planned and concur[red] in

6  the tortuous scheme with knowledge of its unlawful purpose."   Id.

7  Here, the record does not demonstrate knowledge on behalf of Roe,

8  Ramsay, Lopez, and Davis that they were engaging together in an

9  unlawful purpose.

10       Therefore, plaintiff's motion for summary judgment

11  based on its civil conspiracy theory within its seventh, ninth,

12  and tenth claims will be denied.

13       IT IS THEREFORE ORDERED that:

14       1. On the claim for relief 1 for breach of contract,

15  plaintiff's motion for summary judgment be, and the same hereby

16  is, DENIED and defendant Roe's motion for summary judgment be,

17  and the same hereby is, GRANTED.

18       2. On the claim for relief 2 for breach of contract,

19  plaintiff's motion for summary judgment be, and the same hereby

20  is, DENIED and defendants Roe, Ramsay, Lopez, Crossen, Davis, and

21  Peebler's motions for summary judgment be, and the same hereby

22  are, GRANTED.

23       3. On the claim for relief 3 for breach of contract,

24  plaintiff's motion for summary judgment be, and the same hereby

25  is, DENIED and defendants Roe, Lopez, and Crossen's motions for

26  summary judgment be, and the same hereby are, GRANTED.

27       4. On the claims for relief 5 and 6 for trade secret

28  misappropriation, defendant Ramsay's motion for summary judgment

1    be, and the same hereby is, GRANTED and defendants Roe and

2    Power's motion for summary judgment be, and the same hereby is,

3    GRANTED with respect to information about employee costs and

4    costs of maintenance services, and DENIED in all other respects.

5         5. On the claim for relief 7 for intentional

6    interference with contractual relations, plaintiff's motion for

7    summary judgment be, and the same hereby is, DENIED and

8    defendants Roe, Power, Ramsay, Lopez, and Davis' motions for

9    summary judgment be, and the same hereby are, GRANTED.

10        6. On the claim for relief 8 for the Computer Fraud and

11    Abuse Act, defendant Roe's motion for summary judgment be, and

12    the same hereby is, GRANTED.

13        7. On the claim for relief 9 for breach of fiduciary

14    duty, plaintiff and defendant Roe's motions for summary judgment

15    be, and the same hereby are, DENIED and defendants Ramsay, Lopez,

16    and Davis' motion for summary judgment be, and the same hereby

17    is, GRANTED.

18        8. On the claim for relief 10 for breach of the duty of

19    loyalty, plaintiff and defendants Roe, Ramsay, and Davis' motions

20    for summary judgment be, and the same hereby are, DENIED and

21    defendant Lopez's motion for summary judgment be, and the same

22    hereby is, GRANTED.

23        9. Plaintiff's motion for summary judgment based on its

24    theory of civil conspiracy within its seventh, ninth, and tenth

25    claims be, and the same hereby is, DENIED.

26        Plaintiff's claims for relief 5 and 6 for trade secret

27    misappropriation against Roe and Power, claim for relief 9 for

28    breach of fiduciary duty against Roe, and claim for relief 10 for

breach of loyalty against Roe, Ramsay, and Davis remain pending in this action.

Dated:   September 1, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

32